UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ETHAN J. GJUROVICH,

        Petitioner,

  vs.

                                    5:01-CR-215

UNITED STATES OF AMERICA,

        Respondent.

---

APPEARANCES:                                  OF COUNSEL:

Alexander Bunin                          Paul Evangelista, Esq.
Federal Public Defender               Asst. Federal Public Defender
39 North Pearl Street
Albany, New York  12207

ANDREW T. BAXTER               Thomas Spina, Esq
United States Attorney                Assistant U.S. Attorney
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York  12207

**Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

**I.    Introduction**

On May 18, 2001, petitioner, pled guilty to a two count indictment charging him with transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1) and possession of child pornography in violation of 18 U.S.C. § 2252(a)(5)(B).  In October 2001, petitioner was sentenced by this Court to seventy (70) months incarceration on Count One and (60) months incarceration on Count Two to run concurrently followed by three (3) years of supervised release.  Petitioner did not appeal his conviction or sentence.  Petitioner filed the present motion to dismiss

the petition filed by the United States Probation Office for modification of the conditions or terms of his supervised release.  Specifically, petitioner objects to the Probation Office's request that he submit to computerized voice stress analysis ("CVSA"), in addition to regular polygraph examinations, as a further special condition of his release in the community.  According to the Probation Office, CVSA "is the most recent supervision tool being utilized for 'truth verification' and is consistent with the 'containment approach,' which has been clearly identified as the most effective method of maintaining and monitoring sex offenders in the community."  Petitioner argues that CVSA is not reasonably related to the need to: 1) afford adequate deterrence; 2) protect the public from future crimes; or 3) provide petitioner with needed education, vocational training, medical care or other correctional treatment in the most effective manner.  Further, petitioner contends that CVSA is not a reliable method of truth verification.

Prior to modifying the conditions of a convicted person's supervised release, a court must hold a hearing pursuant to Fed. R. Crim. P. 32.1(c), unless a hearing is expressly waived.  In the present case, the parties have agreed to address by way of written submissions the issue whether petitioner's conditions of release may be modified.

**II.     Discussion**

The federal statute which guides district courts in the matter of modifying or revoking terms or conditions of supervised release is 18 U.S.C. § 3583(e):

> The court may, after considering the factors set forth in section 3553(a) . . . modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision.

2

18 U.S.C. § 3583(e).  The relevant sentencing "factors" a court is required to consider as set forth in 18 U.S.C. § 3553(a) when modifying or revoking the terms and conditions of supervised release are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available . . .

Amongst the various permitted conditions of supervised release that may be imposed pursuant to 18 U.S.C. § 3583(d), a court may order, as a further condition of supervised release, "**any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate**" as long as said condition is:

> (1) is reasonably related to the factors set forth in section 3553(a) . . . ;
>
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a) . . .; and
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a).

18 U.S.C. § 3583(d) (emphasis added).

The Second Circuit has long held that polygraph testing may be imposed properly as a

3

special condition of supervised release without violating Fifth Amendment principles. *See United States v. Johnson*, 446 F. 2d 272, 277 (2d Cir. 2006) (district courts may impose special conditions of supervised release to extent that they are 'reasonably related' to (i) nature and circumstances of offense and history and characteristics of defendant, and (ii) purposes of sentencing, including need to afford adequate deterrence, to protect public from further crimes of defendant, and to provide defendant with needed training or treatment) (citing *United States v. Germosen*, 139 F. 3d 120, 131 (2d Cir. 1998). In *Johnson,* the Second Circuit rejected the petitioner's claim that the polygraph was unreliable, unrelated to pertinent sentencing factors, and imposed a greater deprivation of his liberty than was actually necessary. Indeed, the Circuit agreed that "[t]he case for use of polygraph testing [was] strong here in light of 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Johnson*, 446 F. 3d at 278 (quoting *Germosen*, 139 F.3d at 131).

> The polygraph can help penetrate deception and encourage an offender to confront his own motivations and behaviors. These outcomes further sentencing objectives such as rehabilitation and deterrence, with reasonably small incremental deprivations of liberty. We therefore conclude that polygraph testing can, and in this case does, further sentencing goals without excessive deprivations of liberty.

*Id.*

According to the government, petitioner has "experienced difficulty" complying with the terms of his supervised release since his term commenced on December 7, 2006. On February 20, 2007, petitioner failed to report for drug testing. He was reprimanded and the frequency of his reporting was increased. In April 2007, it was discovered that he may have been tampering with the computer monitoring software utilized to monitor his on-line computer activities. This information resulted in a search of his residence where it was discovered that petitioner had been

4

communicating via e-mail with a federal prisoner who was a convicted sex offender. In May 2007, petitioner used cocaine in violation of his conditions for release. The Court ordered petitioner to reside in a halfway house for six months. While residing at the Horizon Center, petitioner was found in possession of a magazine depicting sexually stimulating images. As a result of this violation, the Court extended petitioner's stay in the halfway house by one month. Petitioner also failed to report for a drug test on September 4, 2008. Petitioner does not controvert any of these facts submitted by the government in support of the supervised release modification petition.

According to the U.S. Probation Officer Edward Cardinal, who submitted an affidavit in support of the application to use CVSA, the "containment approach" for monitoring sex offenders in the community involves three equally important prongs: 1) sex offender treatment; 2 collaborative supervision/monitoring involving the Probation Office, treatment providers, law enforcement agencies, and family members; and 3) consistent utilization of "truth verification" instruments. Officer Cardinal avers that in addition to the polygraph, the CVSA examination provides information which enables the Probation Office, in conjunction with treatment providers, to determine compliance with conditions of release and to deter further criminal conduct for the protection of the community. Cardinal also states that the goals of the containment approach cannot be met by the polygraph alone. According to Cardinal, sex offenders subjected to multiple polygraphs over a period of time may experience what is known as a "dampening effect," when familiarity of the polygraph reduces the physiological reaction to stress and renders the instrument ineffective. According to Officer Cardinal, the results of a CVSA examination alone are not used for violation reports or legal actions, but "as a supervision

strategy for further investigations and deterrence."

CVSA technology is used by approximately 1800 law enforcement agencies in the United States according to NITV, the leading manufacturer of the devices. William Endler, Director of Law Enforcement and Training for NITV, submitted an affidavit in this case in which he avers that one of the reasons for the growing use and success of CVSA is that there are "no known countermeasures to defeat examinations."

> The CVSA is an instrument that utilizes the voice to measure physiological changes in brain-stress activity. When an individual is not being truthful, the autonomic nervous system causes an inaudible change in voice frequency. Micro tremors are tiny frequency modulations in the human voice. The CVSA detects, measures, quantifies, and graphically displays the discrete changes in these frequencies. The picture of a response captured by the CVSA demonstrates the changes in FM frequency that occur in the voice of an individual under stress. Responses are then analyzed to determine whether an individual is being deceptive. The CVSA generally takes about 45 minutes wherein the examinee answers yes or no to a series of questions posed to them by a certified examiner. The examinee answers the questions with a microphone attached to his or her lapel.

These facts are not controverted by petitioner. Rather, petitioner directs the Court to two articles and one study that question the reliability and effectiveness of CVSA technology. The government concedes the existence of a number of sources question the soundness of CVSA testing. However, as noted by the Second Circuit in *Johnson*, when confronted with the same arguments about polygraph testing, the reliability of the technology and its admissibility as evidence "does not bear much on the therapeutic value of the tool." *Johnson,* 446 F. 3d at 278. Petitioner argues that the use of the CVSA is not reasonably related to the purposes of sentencing. The Court disagrees based on "the nature and circumstances of the offense and the history and characteristics of the defendant." *Id*.

6

**III.    Conclusion**

Based on the foregoing, petitioner's motion to dismiss the petition for modification of the terms of his supervised release is DENIED.

IT IS SO ORDERED.

Dated: October 1, 2009
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge